**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**LATOYA JAMES, Individually and as Parent Natural Guardian of P.J., and Infant,**

**Plaintiff,**

**vs.** **1:25-CV-1308 (MAD/ML)**

**CAPITAL DISTRICT YOUTH CENTER, TOGETHER FOR YOUTH, SCHENECTADY COUNTY DEPARTMETN OF SOCIAL SERVICES, and JOHN NEDOROSCIK,**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**LAMARCH SAFRANKO LAW, PLLC** **NICHOLAS J. EVANOVICH III, ESQ.**
987 New Loudon Road
Cohoes, New York 12047
Attorney for Plaintiff

**HANCOCK ESTABROOK, LLP** **JOHN L. MURAD, JR., ESQ.**
1800 AXA Tower I, 100 Madison Street **GABRIELA C. GROMAN, ESQ.**
Syracuse, New York 13202
Attorneys for Defendants Together for Youth Capital District Youth Center, and John Nedoroscik

**GOLDBERG SEGALLA** **JONATHAN M. BERNSTEIN, ESQ.**
8 Southwoods Boulevard, Suite 300
Albany, New York 12211
Attorney for Defendant Schenectady Department Of Social Services

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On August 8, 2025, plaintiff Latoya James, individually and as parent and natural guardian to P.J., an infant ("Plaintiff"), commenced this action in County of Schenectady Supreme Court against defendants Capital District Youth Center, Inc. ("CDYC"), Together for Youth ("TFY"), and Schenectady County Department of Social Services ("Social Services"). Dkt. No. 2. On September 17, 2025, the action was removed to this district. *See* Dkt. No. 1 at 1–4. On October 31, 2025, Plaintiff filed an amended complaint, adding John Doe employees as defendants. Dkt. No. 13. On November 15, 2025, Plaintiff filed a second amended complaint, naming John Nedoroscik as a defendant and removing references to John Doe defendants. Dkt. No. 18.

Plaintiff brings three causes of action against Defendants: (1) Assault/Violation of Civil Rights (42 U.S.C. §1983) (against Defendants Capital District Youth Center, Inc., Together for Youth, and John Nedoroscik); (2) Deliberate Indifference to Medical Needs (42 U.S.C. §1983) (against all Defendants); and (3) Negligence (New York law) (against all Defendants). *Id.*

On November 24, 2025, Defendant Schenectady County Department of Social Services filed a motion to dismiss. Dkt. No. 20. On December 5, 2025, Defendants Capital District Youth Center, Inc., John Nedoroscik, and Together For Youth ("Group Defendants"), filed a motion to dismiss. Dkt. No. 23. Plaintiff filed a response to both motions to dismiss. Dkt. No. 26; Dkt. No. 27. Defendant Schenectady County Department of Social Services filed a reply, Dkt. No. 28, as did Group Defendants, Dkt. No. 29. For judicial efficiency, the Court will address both motions to dismiss, together.

For the reasons that follow, Social Services' Motion to Dismiss is granted in full, and Group Defendants' Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

The following is as set forth in the Second Amended Complaint.

P.J., a legal infant, was confined in the Capital District Juvenile Secure Detention Facility. Dkt. No. 18 ¶ 6. The facility is "administered by Capital District Youth Cener, Inc., and operated by Together for Youth." *Id.* ¶ 7. "[D]efendant Schenectady County Department of Social Services . . . was required to provide and ensure proper supervision, safety, rehabilitation, services, counseling, mentorship, treatment and supervision of infant plaintiff." *Id.* ¶10. "Defendant Jon Nedoroscik . . . was at all relevant times an employee at the Capital District Juvenile Secure Detention Center." *Id.* ¶ 7.

"On or about May 13, 2024, . . . infant plaintiff P.J. was otherwise the victim of another infant or infants, and during the response by the facility, [Defendant] John Nedoroscik utilized improper use of force, causing P.J. to be thrown and violently smash his face and head." *Id.* ¶13. Specifically, Defendant Nedoroscik used "improper techniques involving pushing, a clinch hold, and throwing." *Id.* ¶14. "P.J. suffered serious injuries, including facial fractures, vision loss, and a concussion, and was not properly provided medical care or follow-up treatments." *Id.* ¶18. After three to four days following the incident in which P.J.'s condition worsened, he was transported to the hospital and provided care there. *See id.* ¶¶20–25. "After release, infant plaintiff P.J. has been denied proper medical follow-up, transport to necessary facilities, medically relevant follow up X-rays and MRIs, physical and mental therapies, and access to a pediatrician, ophthalmologist, or optometrist." *Id.* ¶27. Plaintiff's symptoms, including "headaches, vomiting, severe pain, and temporary vision loss," have continued. *Id.*

Plaintiff alleges that P.J.'s injuries were caused by facility policies with respect to "improper staffing, training, supervision, . . . medical treatment and response," and him being held in an inappropriate part of the facility. *See id.* ¶¶ 33–40.

## III. DISCUSSION

### A. Legal Standards

#### *1. Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately,

"when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B. Defendant Social Services**

Defendant Social Services argues that it must be dismissed, because it is not amenable to be sued. Dkt. No. 20 at 1; *see Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities. The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself."). Schenectady County is the appropriate defendant. *See* Dkt. No. 20 at 1. Plaintiff concedes this point and expresses a desire to amend the complaint. Dkt. No. 26 at 1, 15. Additionally, Plaintiff argues that "the Court should otherwise allow amendment, reach the merits, and deny dismissal." *Id.* at 6.

Plaintiff appears to suggest that this Court should allow Plaintiff to amend the complaint, inserting Schenectady County and reach the merits of Social Services' Motion, in one decision. *See* Dkt. No. 26 at 6. Defendant Social Services argues that Plaintiff has not made "a proper cross motion," as is required for the Court to grant Plaintiff relief. Dkt. No. 28 at 1.

With respect to the status of Defendant Social Services, the Court must dismiss it from this action, since, as Plaintiff acknowledges, it is not a proper party to the case. *See Omnipoint Commc'ns, Inc.*, 658 F. Supp. 2d at 552.

With respect to Plaintiff's desire to amend the complaint and add Schenectady County as a defendant, the Court observes that Plaintiff has not filed a formal motion to amend the Second Amended Complaint. *See* Dkt. No. 26; *see generally* Dkt. Under our Local Rules, "a party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned

copy of the proposed amended pleading to its motion pleading." N.D.N.Y. L. R. 15.1(a). This has not occurred here. *See* Dkt. No. 26. The Court will therefore not grant Plaintiff's request to add Schenectady County as a Defendant at this time. However, the Court will permit Plaintiff leave to amend the complaint at a later date.

**C. Group Defendants**

***1. Dismissal of Latoya James in her Personal Capacity***

Group Defendants argue that as she "is not alleged to have suffered a personal injury, Latoya James must be dismissed as a party to the extent she is proceeding in her individual capacity." Dkt. No. 25 at 3. Plaintiff concedes that Plaintiff Latoya James is proceeding only "in her capacity as parent and natural guardian on behalf of P.J. and his claims," has no individual claims, and is not proceeding in an individual capacity. Dkt. No. 27 at 14. As Group Defendants' argument is unopposed, this Court hereby dismisses Plaintiff Latoya James in her personal capacity.

***2. Federal Claims***

Group Defendants make two arguments as to why Plaintiff's federal claims should be dismissed. First, they argue that Plaintiff has not alleged facts that meet the "under color of state law" requirement of 42 U.S.C. §1983 ("section 1983"). Dkt. No. 25 at 4–5 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999)); *see* section 1983. Second, they argue that Plaintiff has not met the requirements of a *Monell* claim. *See* Dkt. No. 25 at 4–7; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Each is discussed in turn.

a. <u>"Under color of state law"</u>

Section 1983 provides a right of action for plaintiffs deprived of a right secured by the

Constitution or laws of the United States," if the "deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 49. "For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when . . . [*inter alia*,] the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)).

Group Defendants argue that Plaintiff "fails to allege TFY, CDYC, and Mr. Nedoroscik acted under color of state law or that the Defendants are state actors." Dkt. No. 25 at 4. Plaintiff argues that running a detention facility is a public function that has been delegated by the State to Defendants TFY and CDYC, and that therefore Group Defendants' actions were undertaken "under color of state law." Dkt. No. 27 at 9–10.

"Numerous courts have held that privately run prisons are state actors for section 1983 purposes pursuant to the public function test." *Byng v. Delta Recovery Servs.*, LLC, No. 6:13-CV-733 MAD/ATB, 2013 WL 3897485, at *6 (N.D.N.Y. July 29, 2013), aff'd, 568 F. App'x 65 (2d Cir. 2014) (collecting cases). This is so because ""[t]he function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state." *Id.* (quoting *McCullum v. City of Philadelphia*, No. CIV. A. 98-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999). It makes no difference in this analysis whether the correctional facility houses juveniles or adults. *See Doe v. N. Homes, Inc.*, 11 F.4th 633, 637–39 (8th Cir. 2021) (finding that a juvenile correctional facility performed a public function). Here, Plaintiff alleges that Defendants CDYC and TFY administer and operate, respectively, a youth detention facility at which Defendant Nedoroscik was employed. Plaintiff contends CDYC "was a governing body duly organized and existing under the laws of the State of New York." *See* Dkt. No. 18 ¶¶ 8–9. At this early stage of

the case, Plaintiff's complaint sufficiently alleges that Defendants were performing a public function, such that they are amenable to be sued under section 1983.

b. *Monell Claims*

Plaintiff brings claims under section 1983 against Defendants CDYC and TFY. Dkt. No. 18 ¶¶ 41 –52.

It is well-established that "[t]he doctrine of respondeat superior is inapplicable to section 1983 claims." *Alexander v. Whitney*, No. 9:04-CV-1298 LEK/GJD, 2008 WL 904897, at *4 (N.D.N.Y. Mar. 31, 2008). That is, a plaintiff seeking to hold a municipality—or a nongovernment entity performing a public function—liable under section 1983 must meet the requirements for a *Monell* claim. *See Martin v. Cnty. of Nassau*, 692 F. Supp. 2d 282, 296 (E.D.N.Y. 2010); *Hoffstead v. Aramark Corr. Servs.*, LLC, No. 18 CV 2381 (VB), 2019 WL 1331634, at *5 (S.D.N.Y. Mar. 25, 2019). *Monell* liability "impose[s] civil liability on municipalities for their *own* illegal acts," not the illegal acts of their employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The "injury [must be] caused by a municipal policy or custom." *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 30–31 (2010).

There are four scenarios in which a plaintiff can meet the policy or custom requirement: (1) "a formal policy exists subjecting the municipality to liability"; (2) "a policy-making official for the municipality caused a deprivation of [the plaintiff's] constitutional rights"; (3) "a practice was so consistent and widespread that it constitutes a tacit custom that 'is so widespread as to have the force of law'"; (4) "policymakers failed to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who interact with municipal employees." *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 36 (N.D.N.Y.

2020) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–07 (1997)).

Group Defendants argue that "Plaintiff fails to plausibly allege any factual allegations sufficient to show that TFY and/or CDYC maintained a policy or custom that caused the alleged deprivation of P.J's constitutional rights." Dkt. No. 25 at 6. Rather, Group Defendants claim that Plaintiff's assertions rest entirely on the "isolated events in this matter," and thus do not demonstrate the existence of any unconstitutional "policies, *de facto policies*, and customs, [or a] failure to train staff." *Id.* Conversely, Plaintiff raises three areas in which, she argues, she alleged *Monell* violations with sufficient specificity. First, that there was insufficient training, as Defendant Nedoroscik's acts "naturally flow from improper training and supervision." Dkt. No. 27 at 11. Second, that P.J. "being housed in an inappropriate area" necessarily followed by decisions from managers in the detention facility. *See id.* Third, that "there were continued and pervasive issues with staffing." *Id.* The Court discusses each in turn.

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985) (noting that if federal courts engage "in an endless exercise of second-guessing municipal employee-training programs" it would "implicate serious questions of federalism"). The mere fact that an officer acted wrongfully does not imply that the officer was unconstitutionally trained. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

At the motion to dismiss stage, "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not

relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms v. City of New York*, 480 Fed. Appx. 627, 631 n.4 (2d Cir. 2012); *see also Smith v. Collins*, No. 15-cv-216, 2016 WL 817473, *2 (S.D.N.Y. Feb. 26, 2016) ("Following *Iqbal* and *Twombly*, ... the Second Circuit has indicated that some non-conclusory allegation as to deficient training programs is necessary at the pleading stage"). Thus, plaintiffs can meet their pleading obligations "by alleging facts indicating '[a] pattern of similar constitutional violations by untrained [municipal] employees.'" *Simms*, 480 Fed. Appx. at 631 n.4; *see also Durr v. Slator*, 558 F. Supp. 3d 1, 36 (N.D.N.Y. 2021) (holding that, "[i]n order for Plaintiff to succeed on his failure to train and failure to discipline theories, there must be a pattern of similar misconduct") (quoting *Davis v. City of New York*, No. 12 CIV. 3297, 2018 WL 10070540, *6 (S.D.N.Y. Mar. 30, 2018)). At bottom, "without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Here, Plaintiff alleges wrongful conduct, and that Mr. Nedoroscik was "improperly trained and supervised" regarding the use of force. *See* Dkt. No. 18 ¶¶ 13–15. Contrary to Plaintiff's assertion, the alleged wrongful "acts [do not] naturally flow from improper training and supervision." *Compare Harris*, 489 U.S. at 391, *with* Dkt. No. 27 at 11. Nor does merely stating conclusorily that Defendant Nedoroscik was improperly trained make for a "facially plausible claim" under *Iqbal*. *See Smith*, No. 15-cv-216, 2016 WL 817473 at *2. This Court thus finds that Plaintiff has failed to state a failure to train claim.

With respect to Plaintiff's claim that P.J. was "housed in an inappropriate area," it is not clear what type of *Monell* claim Plaintiff argues follows from this fact. *Compare Dixon*, 493 F. Supp. 3d at 36, *with* Dkt. No. 27 at 11. However, all *Monell* claims require that the plaintiff

demonstrate that the municipality or entity performing a public function must be "the 'moving force' behind the injury alleged." *See Shea v. Town of Brookhaven*, No. 2:21-CV-5696 (NJC) (LGD), 2026 WL 948364, at *36 (E.D.N.Y. Apr. 8, 2026). Plaintiff has not alleged facts indicating that P.J. being placed in an inappropriate unit caused Defendant Nedoroscik to use improper force against P.J, or was otherwise the "moving force" of the alleged injury. *See* Dkt. No. 18 ¶¶ 11–17. Therefore, the allegation regarding improper placement does not support a *Monell* claim.

Finally, Plaintiff notes the "continued and pervasive issues with staffing," Dkt. No. 27 at 11. Plaintiff alleges this was responsible for P.J. not receiving "proper medical attention for days." Dkt. No. 18 ¶21. Relatedly, Plaintiff alleges an Albany Medical Center staff member told Plaintiff Latoya James that the unavailability of "OT (interpreted as overtime)," apparently for the detention facility's staff, was why P.J. was getting released from the hospital. Dkt. No. 18 ¶24.

Defendants do not mention the staffing issue in their briefing papers, instead making two general arguments regarding Plaintiff's *Monell* claim. *See generally*, Dkts. No. 25, 29. The Court disagrees with both. First, Defendant argues that Plaintiff has not shown causation. *See* Dkt. No. 29 at 2. However, Plaintiff's assertions that improper staffing led to delays in receiving medical care, and that "P.J.'s condition . . . worsen[ed] over three to four (3-2) days" Dkt. No. 18 ¶21–22, imply a causal link between staffing and P.J's injuries. Having an inadequate number of people working in a correctional facility can lead to delayed medical care. *See Brown v. Plata*, 563 U.S. 493, 504–05 (2011).

Second, Defendant claims that Plaintiff has not raised enough "factual allegations sufficient to show that TY and/or CDYC maintained a policy or custom that caused the alleged deprivation of P.J.'s constitutional rights." Dkt. No. 25 at 6. Plaintiff alleges that "[t]he facility

was routinely understaffed." Dkt. No. 18 ¶20. For a *Monell* claim alleging a "custom," "there must be a 'longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity.'" *Shea v. Town of Brookhaven*, No. 2:21-CV-5696 (NJC) (LGD), 2026 WL 948364, at *38 (E.D.N.Y. Apr. 8, 2026) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). At the motion to dismiss stage, Plaintiff's allegation of routine understaffing, though threadbare, is sufficient to state a plausible claim of a custom among the facility operators. The Court therefore denies Defendants' Motion with respect to the understaffing component of the *Monell* claim.

***2. State Claim: Negligence***

Plaintiff brings a state-law negligence claim against all Defendants. Dkt. No. 18 ¶¶53–59.

Defendants move to dismiss the negligence claim as "duplicative of Plaintiff's constitutional violation claims." Dkt. No. 25 at 7. Plaintiff responds that "the pleaded acts that involve Mr. Nedoroscik, TFY and CDYC leave open the full culpable mental states and degrees of the inappropriate force, the reasoning for any inappropriate training, and the background and circumstances of inadequate staffing of employees and medical personnel." Dkt. No. 27 at 13.

"[W]hen a plaintiff's factual allegations are only consistent with a theory of intentional, or perhaps reckless, conduct, negligence claims must be dismissed." *Benbow v. City of New York*, No. 17-CV-6457(EK)(JRC), 2024 WL 5165073, at *11 (E.D.N.Y. Dec. 19, 2024) (quoting *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015)). An officer's use of excessive force generally constitutes an intentional tort, rather than negligence. *Id.* Excessive force can be negligent, under New York law, only if the contact was "inadvertent" rather than "intentional." *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 88 n.14 (E.D.N.Y. 2012); *see also Mazzaferro v. Albany Motel Enters.*, Inc., 127 A.D.2d 374, 376, 515 N.Y.S.2d 631, 632–33 (1987) ("New

York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently.").

Defendant Nedoroscik's alleged use of force, which "caus[ed] P.J. to be thrown and violently smash his face and hand," Dkt. No. 18 ¶13, is only consistent with a theory of intentional tort, *see Benbow*, 2024 WL 5165073 at *11. "[P]ushing, a clinch hold, and throwing" are acts inconsistent with accidental contact. *See* Dkt. No. 18 ¶14. Therefore, the negligence claim against Defendant Nedoroscik must be dismissed.

The alleged lack of "immediate and appropriate medical treatment" included in the Complaint, Dkt. No. 18 ¶55, however, could potentially be the result of negligence. Defendants do not brief the relationship between the negligence and inadequate medical care claims. *See generally*, Dkt. No. 25; Dkt. No. 29. Under New York law, providing inadequate medical care to prisoners can constitute negligence. *See Snyder v. State*, 70 Misc. 3d 801, 810, 138 N.Y.S.3d 802, 811 (N.Y. Ct. Cl. 2020). Therefore, there are plausible negligence claims against Defendants TFY and CDYC, which shall not be dismissed at this stage.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motions to dismiss (Dkt. Nos. 20, 23) is **DENIED in part and GRANTED in part**; and the Court further

**ORDERS** that claim brought by Plaintiff Latoya James, individually, are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint within **twenty-one (21) days** of the date of this Memorandum-Decision and Order in compliance with the decision herein;[1] and the Court further

**ORDERS** that upon compliance with this decision, the case shall be referred to the Magistrate Judge for scheduling of the Rule 16 conference; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 17, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge

[1] The Court has permitted to proceed a *Monell* claim related solely to the alleged understaffing of the entities that governed P.J.'s confinement and care as well as a negligence claim related solely to the alleged lack of proper medical care following the use of force. Insofar as Defendants do not challenge the section 1983 claims against Defendant Nedoroscik regarding the alleged use of force and medical indifference, those claims also proceed.